## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

**BERNADINE DENISE B.,**

               **Plaintiff,**

    **v.**                            **CIVIL ACTION NO. 2:23-cv-114**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

               **Defendant.**

### *MEMORANDUM OPINION AND ORDER*

This matter comes before the Court on Bernadine Denise B.'s[1] ("Plaintiff") Objection to the Report and Recommendation ("R & R") of the Magistrate Judge ("Objection"). ECF No. 15 ("Pl.'s Obj."). For the reasons set forth below, the Court **SUSTAINS in part and OVERRULES in part** Plaintiff's Objection, and the Magistrate Judge's R & R is **ADOPTED in part and REJECTED in part.** Plaintiff's motion for summary judgment[2] (ECF No. 11) is **GRANTED** only insofar as it seeks remand of the Commissioner's decision. Defendant's motion for summary judgment (ECF No. 12) is **DENIED**. The decision of the Commissioner ("Defendant") is **REMANDED** for further proceedings as specified herein.

### I.    FACTUAL AND PROCEDURAL HISTORY

The facts and administrative procedural background are adopted as set forth in the Magistrate Judge's R & R of January 5, 2024, and the Administrative Record. *See* R & R, ECF

---

[1] In accordance with a committee recommendation of the Judicial Conference, Plaintiff's last name has been redacted for privacy reasons. Comm. On Ct. Admin. & Case Mgmt. Jud. Conf. U.S., Privacy Concern Regarding Social Security and Immigration Opinions 3 (2018).
[2] The Court construes Plaintiff's Memorandum of Law in Support of Social Security Appeal and Defendant's Brief in Support of the Commissioner's Decision Denying Benefits and in Opposition to Plaintiff's Motion for Summary Judgment as competing motions for summary judgment. *See* ECF Nos. 11, 12; *see also* Compl., ECF No. 1 at 2 (requesting judgment for Plaintiff or remand).

RECEIVED

2024 JUN 24 P 3 48

CLERK US DISTRICT COURT
NORFOLK, VIRGINIA

No. 14; Admin. Record, ECF No. 6 ("R."). This case involves Plaintiff's claims for disability insurance benefits under the Social Security Act. On June 27, 2022, an Administrative Law Judge ("ALJ") issued a written opinion finding that Plaintiff did not qualify for disability benefits. R. 23–39. The ALJ followed the sequential five-step analysis outlined in 20 C.F.R. § 404.1520(a)(4) to evaluate Plaintiff's disability claim. *Id.*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity as of June 28, 2019, the alleged disability onset date. R. 25. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative joint disease of the bilateral hips, disorders of the skeletal spine, and obesity. R. 26–29. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in the applicable regulation. R. 29–31. The ALJ proceeded to determine Plaintiff's residual functional capacity ("RFC"), concluding that Plaintiff was able to perform light work with certain limitations. R. 31–36. At step four, the ALJ found that Plaintiff could perform past relevant work as a personnel services manager and a public relations representative. R. 36. At step five, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy considering her age, education, work experience, and RFC. R. 36–39. Ultimately, the ALJ determined that Plaintiff had not been under a disability from June 28, 2019, through the date of the decision. R. 39.

On February 8, 2023, the Appeals Council denied Plaintiff's request for review. R. 4. On March 24, 2023, Plaintiff filed a complaint in this Court seeking judicial review of the decision of the Commissioner of Social Security under 42 U.S.C. §§ 405(g) and 1383(c)(3). ECF No. 1. On May 23, 2023, the Court referred this action to United States Magistrate Judge Douglas E. Miller ("the Magistrate Judge") pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct hearings and to submit

proposed findings of fact and, if applicable, recommendations for the disposition of this matter. ECF No. 7.

The Magistrate Judge filed his R & R on January 5, 2024, recommending that the Court affirm the ALJ's decision. R & R at 2. Plaintiff filed her Objection to the R & R on January 18, 2024. *See* Pl.'s Obj, ECF No. 15. The Commissioner filed a Response to Plaintiff's Objection on January 25, 2024. ECF No. 16. This matter is now ripe for disposition by the Court.

## II.    LEGAL STANDARD

When considering a party's objections to the findings and recommendations of a magistrate judge, a district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Wimmer v. Cook*, 774 F.2d 68, 73 (4th Cir. 1985). Under de novo review, the magistrate judge's R & R carries no presumptive weight, and the district court may "accept, reject, or modify the recommended decision; receive further evidence; or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see Halloway v. Bashara*, 176 F.R.D. 207, 209–10 (E.D. Va. 1997). An objection is proper so long as it is "sufficient[ly] specific[] so as to reasonably alert the district court of the true ground for the objection." *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). "For portions of the [R & R] for which no proper objection is made, a district court need only review for clear error." *Marti S. v. Kijakazi*, No. 2:22cv400, 2023 WL 8275974, at *1 (E.D. Va. Nov. 30, 2023) (citing *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); Fed. R. Civ. P. 72 advisory committee's note). The Court is "not required to consider new arguments posed in objections to the magistrate's recommendation." *Elijah*, 66 F.4th at 460 n.3 (citing *Samples v. Ballard*, 860 F.3d 266, 275 (4th Cir. 2017)).

3

A court reviewing a decision made under the Social Security Act must determine whether the factual findings are supported by substantial evidence and were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* (internal quotations and citations omitted). When reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Id.* The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971).

### III.   DISCUSSION

Plaintiff argues the Magistrate Judge erred in finding that the ALJ (1) properly evaluated opinion evidence, (2) conducted a proper function-by-function analysis, and (3) satisfied his duty to develop the record. For the reasons explained below, the Court sustains in part and overrules in part Plaintiff's first objection, overrules her second objection, and overrules her third objection.

### A.   The ALJ's Evaluation of the Shaubell-Vanbrunt Opinion

Plaintiff first objects to the Magistrate Judge's conclusion that the ALJ properly evaluated the joint medical opinion of NP-C Elizabeth Shaubell and Dr. Thomas Vanbrunt Jr., D.O. ("Shaubell-Vanbrunt opinion"). *Id.* at 1. She argues that the ALJ did not properly evaluate the supportability and consistency factors under 20 C.F.R. § 404.1520c(b)(2) and that the Magistrate Judge conducted a *post-hoc* rationalization to support the ALJ's analysis. *Id.* at 1–2.

NP-C Shaubell and Dr. Vanbrunt are two of Plaintiff's medical providers who treated her for diabetes and related symptoms. *See* R & R at 9–12, 14. On September 24, 2020, NP-C Shaubell, and Dr. Vanbrunt as co-signer, completed a medical source opinion for Plaintiff. R. 910–11. The

4

Shaubell-Vanbrunt opinion describes Plaintiff's impairments as "diabetic neuropathy causing pain & instability esp[ecially] in feet [and] also has pain in her hands." R. 910. The opinion classifies Plaintiff's pain as "Severe." R. 911. NP-C Shaubell and Dr. Vanbrunt opine that Plaintiff's medical conditions would cause her to miss five or more days of work per month; take her off-task for 60% of an 8-hour workday; require her to lie down for 10 to 20 minutes three times per day; and restrict her ability to sit, stand, walk, stoop, climb, lift or carry objects, and use her hands or arms. R. 910–11. The ALJ found the Shaubell-Vanbrunt opinion unpersuasive:

> [The Shaubell-Vanbrunt opinion] is only supported by a brief statement regarding the claimant's impairments. It is not consistent with treatment notes and their objective findings. Only several days prior, the claimant's gait was normal. Abnormalities elsewhere were no more than mild to moderate. Instead, the opinion appears more aligned with the claimant's subjective complaints.

R. 36.

The Magistrate Judge found that sufficient evidence supported the ALJ's rejection of the Shaubell-Vanbrunt opinion. R & R at 34. He rejected Plaintiff's claim that the ALJ cherry-picked the record, saying that Plaintiff's argument "unfairly narrows the ALJ's comprehensive review of all the medical evidence which preceded, but also informed, his rejection of the Shaubell-Vanbrunt opinion." *Id.* at 31; *see* Pl.'s Mot. at 17. The Magistrate Judge also found that the ALJ sufficiently explained the supportability and consistency factors and cited evidence that was "representative of the record as a whole." R & R at 32; *see id.* at 31–34.

Under 20 C.F.R. §§ 404.1520(c)(a) and 416.920c(a), "the ALJ is not to defer to or give any specific weight to medical opinions based on their source." *Cody v. Comm'r of Soc. Sec. Admin.*, No. 9:20-CV-02620-JD-MHC, 2021 WL 6012228, at *3 (D.S.C. Oct. 27, 2021), *report and recommendation adopted sub nom. Belinda C. v. Comm'r of Soc. Sec.*, No. 9:20-CV-02620-JD-MHC, 2021 WL 6011067 (D.S.C. Dec. 17, 2021). Rather, the ALJ evaluates the

persuasiveness of opinion evidence by considering five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion. *Id.*; 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the most important factors, and an ALJ must at least explain how those two factors led to his or her decision. 20 C.F.R. § 404.1520c(b)(2). "Although these amended regulations do away with the idea of assigning 'weight' to medical opinions, the ALJ's reasons for finding the opinion of a medical source unpersuasive still must be supported by substantial evidence." *Cody*, 2021 WL 6012228, at *4.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). But "the regulations do not require the ALJ to use any 'particular language or adhere to a particular format' in his decision." *William O. v. O'Malley*, No. 3:23-cv-210–HEH, 2024 WL 1376483, at *7 (E.D. Va. Mar. 29, 2024) (quoting *Woodson v. Berryhill*, No. 3:17-cv-347, 2018 WL 4659449, at *6 (E.D. Va. Aug. 7, 2018)). To adequately analyze supportability and consistency, the ALJ "must simply comply with a 'reasonable articulation standard' that enables 'a reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review [the ALJ's] final decision.'" *Todd A. v. Kijakazi*, No. 3:20cv594 (DJN), 2021 WL 5348668, at *5 (E.D. Va. Nov. 16, 2021) (quoting 82 Fed. Reg. 5844-01 at 5858); *see also Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."). "[T]he ALJ need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors." *Todd A.*, 2021 WL 5348668, at *4.

### i.  Supportability

"The supportability factor relates to the extent to which a medical source has articulated support for the medical source's own opinion." *Cody*, 2021 WL 6012228, at *4. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] . . . the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(1).

The ALJ's only explicit mention of supportability says that the narrative entry in the Shaubell-Vanbrunt opinion is "brief." R. 36–37. The ALJ noted that the opinion is "not consistent with treatment notes and their objective findings," but he does not specify whose treatment notes or explain why NP-C Shaubell or Dr. Vanbrunt's medical records do not support their opinion. *Id.* at 36. The ALJ only cited one treatment record by NP-C Shaubell or Dr. Vanbrunt throughout his entire decision. In September 2020, NP-C Shaubell observed that Plaintiff was well-appearing and in no acute pain, but she had edema in her left ankle and worsening neuropathy pain. *See* R. 33 (citing Ex. 4F at 78, 82 (R. 992, 996)); *see also* R. 28 (citing Ex. 4F at 78 (R. 992)) (noting Plaintiff's "euthymic mood and normal affect"). NP-C Shaubell noted that Plaintiff had not titrated up her Gabapentin medications as directed, and she therefore increased Plaintiff's Gabapentin prescription to relieve her neuropathy pain. R. 996; *see* R. 27 (citing Ex. 4F at 82 (R. 996)). The ALJ cited this record in support of his conclusion that Plaintiff's diabetes mellitus with neuropathy was nonsevere.[3] *See* R. 27 (citing Ex. 4F at 82 (R. 996); Ex. 8F at 75 (R. 1616)).

The Magistrate Judge found that substantial evidence supported the ALJ's rejection of the Shaubell-Vanbrunt opinion and that the ALJ's supportability conclusion was traceable throughout

---

[3] The ALJ also cited an October 2021 record by Family Health Nurse Practitioner ("FHNP") Collette Palmer stating that Plaintiff's diabetes mellitus had improved. R. 27 (citing Ex. 8F at 75 (R. 1616)). FHNP Palmer did not mention Plaintiff's pain level.

his RFC analysis. R & R at 31–32 (citing R. 978, 990, 994, 996, 1071, 1700). The Magistrate Judge looked partially to the ALJ's conclusion that Plaintiff's diabetes mellitus with neuropathy is nonsevere and controlled with medication. *Id.* at 31 & n.6 (citing R. 27). The Magistrate Judge also found the narrative entry in the Shaubell-Vanbrunt opinion unsatisfying, not just because it was "brief," but because it did not explain why Plaintiff's impairments would restrict her ability to sit, take her off task for 60% of a workday, or force her to lie down several times per day. *Id.* at 31. But when the Magistrate Judge explained why the ALJ's supportability analysis was adequate, he cited several of NP-C Shaubell and Dr. Vanbrunt's treatment records that the ALJ did not. *Compare id.* at 32 (citing R. 978, 1071, 1700), *with* R. 27 (citing Ex. 4F at 82 (R. 996)).

The Court finds that the ALJ did not adequately explain the supportability factor. The ALJ's limited mention of supportability and generic reference to the record does not allow the Court to "meaningfully review" his conclusion that NP-C Shaubell and Dr. Vanbrunt's treatment notes do not support their medical opinion. *Jaworski R. v. Kijakazi*, No. 3:20-cv-797 (DJN), 2022 WL 203749, at * 7 (E.D. Va. Jan. 6, 2022); *see* R. 36. The ALJ only cited one relevant treatment record by NP-C Shaubell from September 2020, even though there are several other records from Plaintiffs' visits with NP-C Shaubell and Dr. Vanbrunt between October 2020 and May 2021 that discuss Plaintiff's pain and her ability to manage her diabetes symptoms through medication. *See, e.g.*, R. 951, 960, 966, 971. Of course, the ALJ need not follow a particular format or list every relevant medical record pertaining to his supportability finding. *See William O.* 2024 WL 1376483, at *7; *Reid*, 769 F.3d at 865. But the ALJ failed to build a "logical bridge" between his supportability analysis and conclusion that the Shaubell-Vanbrunt opinion was unpersuasive. *Moore v. Kijakazi*, No. 5:21-cv-04202-DCN-KDW, 2023 WL 2583225, at *4 (D.S.C. Mar. 21, 2023) (quoting *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020)). Instead, the ALJ improperly

left the Magistrate Judge to "reverse-engineer" his reasoning. *Paul B. v. Kijakazi*, No. 6:20-cv-00078, 2022 WL 989242, at*4 (W.D. Va. Mar. 31, 2022).

The Magistrate Judge's explanation and citations to the record do not cure the ALJ's failure to provide an adequate supportability analysis. "[T]he regulations . . . require [the] ALJ[] to articulate how relevant evidence, especially relevant countervailing evidence, weighed in his decision." *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). The ALJ "did not specifically connect the record evidence [he] discussed elsewhere to [the Shaubell-Vanbrunt] opinion." *Moore*, 2023 WL 2583225, at *4. Nor did he connect the evidence the Magistrate discussed in the R & R to the Shaubell-Vanbrunt opinion.

For these reasons, the Court finds that the Magistrate Judge erred in finding that the ALJ properly analyzed the supportability factor when rejecting the Shaubell-Vanbrunt opinion.

### ii.   Consistency

"The consistency factor relates to the relationship between a medical source's opinion and other evidence within the record." *Cody*, 2021 WL 6012228, at *4. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ found that the Shaubell-Vanbrunt opinion was not consistent with medical evidence from Plaintiff's other medical sources. R. 36. Although Plaintiff self-reported issues with pain and balance in August 2020 and June 2021, R. 35 (citing Ex. 3E at 2–6 (R. 243–47); Ex. 8E (R. 274–81)), ample evidence from the record shows that Plaintiff's pain improved over time. Treatment records from July and August 2021 by Dr. Matthew Leyton (Ex. 7F at 3–4 (R. 1532–33)) and Seaside Occupational Therapy LLC (Ex. 10F at 1–19 (R. 1726–44)) show that Plaintiff's

pain was improving and her gait was steady but antalgic.[4] R. 33. By September 2021, Plaintiff had benefited from physical therapy, reported low wrist and hand pain, and was able to cook for a few hours without pain. R. 33–34 (citing Ex. 10F at 9, 11 (R. 1734, 1736)). In October 2021, several days before the Shaubell-Vanbrunt opinion was signed, Plaintiff displayed a normal gait according to records from Dr. Michael Dore and FHNP Collette Palmer. R. 36; *see* R. 34 (citing Ex. 8F at 73, 77 (R. 1614, 1618)).

The Magistrate Judge found that the ALJ sufficiently analyzed the consistency factor when rejecting the Shaubell-Vanbrunt opinion and cited additional evidence supporting the ALJ's conclusion. R & R at 32–33. Records from 2017 and 2018 by Dr. Floria Singson (R. 591, 619, 726) and Dr. Mark S. Johnson (R. 680) show that Plaintiff consistently demonstrated a normal gait before the alleged onset date. *See id.* Several records from Pivot Physical Therapy between November 2019 and January 2020 demonstrate that Plaintiff "completed resisted walking and other rigorous walking-related exercises" and "benefited from her strenuous physical therapy treatment." *See id.* at 33 (citing R. 320, 323, 330, 333, 336, 339, 342, 345, 351, 354, 357). In July 2021, Dr. Burton F. Alexander (R. 1781) observed Plaintiff to have a normal gait. *See id.* at 33.

Upon review, the Court finds that the ALJ sufficiently explained his consistency analysis and provided a "logical bridge" for meaningful review of his findings. *Moore*, 2023 WL 2583225, at *4. The ALJ reviewed the medical record in detail and cited evidence that is "representative of the record as a whole." R & R at 32. The ALJ's analysis demonstrates that the Shaubell-Vanbrunt opinion is inconsistent with medical evidence showing that Plaintiff's pain levels improved and were not as severe or debilitating as the opinion suggests.

---

[4] The ALJ noted that Plaintiff had balance issues that led to a fall in August 2021. R. 33 (citing Ex. 10F at 17 (R. 1742)).

For these reasons, Plaintiff's first objection is SUSTAINED in part and OVERRULED in part. The Court ADOPTS the Magistrate Judge's conclusion that the ALJ properly analyzed the consistency factor in finding the Shaubell-Vanbrunt opinion unpersuasive. *Id.* at 32–34. The Court respectfully REJECTS the Magistrate Judge's finding that the ALJ properly analyzed the supportability factor and will REMAND the case for a proper supportability analysis as required under 20 C.F.R. § 404.1520c(c)(1). *Id.* at 31–32; *cf. William O.*, 2024 WL 1376483, at *8 (adopting Magistrate Judge's conclusion that substantial evidence supported the ALJ's findings but remanding for a proper consistency analysis).

## B.    The ALJ's Function-By-Function Analysis

In Plaintiff's second objection, she challenges the Magistrate Judge's finding that the ALJ's function-by-function analysis need not quantify the amount of time she can sit or how long she can sit and stand before changing position. Plaintiff argues that the ALJ actually determined a sedentary work RFC, not a light work RFC, meaning Social Security Ruling ("SSR") 96-9p and relevant caselaw require the ALJ to quantify how long Plaintiff can sit and stand.[5] *See* Pl.'s Obj. at 4–5 (citing *Dowling*, 986 F.3d at 387–88; *Esteban H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-61, 2023 WL 2760059, at *7 (E.D. Va. Apr. 3, 2023)).

A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). Evaluating an RFC requires an ALJ to "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe*, 826 F.3 at 188). The RFC assessment must evaluate the claimant's ability

---

[5] Plaintiff also complains that the Magistrate failed to review the record de novo and instead relied on the ALJ's summary of evidence. Pl.'s Obj. at 4. The Court finds that the Magistrate Judge conducted a de novo review, and upon the Court's own de novo review, Plaintiff's second objection fails.

to perform certain physical functions, which may include "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 416.945(b). The ALJ must provide a "narrative discussion" that describes how the evidence supports each conclusion regarding the claimant's RFC, *Thomas*, 916 F.3d at 311 (citation omitted), but the ALJ need not discuss functions that are "irrelevant or uncontested." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (internal quotation and citation omitted). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." *Monroe*, 826 F.3d at 179 (internal quotation marks and citation omitted).

The ALJ found Plaintiff to have the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). R. 31. The ALJ imposed several limits on Plaintiff's ability to perform light work, including that Plaintiff can: frequently but not always balance; occasionally climb stairs, stoop, kneel, and crouch; never climb ladders or crawl; have no more than occasional exposure to vibration or certain workplace hazards; and "frequently but not always finger objects (i.e., fine manipulation) with either hand." *Id.* The ALJ further limited Plaintiff to "standing or walking up to four hours total in an eight-hour workday" and specified that she "must be allowed to occasionally alternate between sitting and standing positions while at the workstation." *Id.* The ALJ noted that Plaintiff can also perform sedentary work. R 37.

In her motion for summary judgment, Plaintiff argued that the ALJ erred by failing to evaluate her ability to sit, as required by SSR 96-9p and relevant case law. Pl.'s Mot. at 21 (citing *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387–88 (4th Cir. 2021)). The Magistrate Judge held that because SSR 96-9p only applies to sedentary work RFCs, not light work RFCs with a sit-stand option, the ALJ need not quantify the duration Plaintiff can sit. R & R at 35. The

Magistrate Judge found that the ALJ adequately explained how often Plaintiff needed to be able to switch between a standing and sitting position—"occasionally." *Id.* at 36.

For the following reasons, the Court finds that the ALJ conducted a proper function-by-function analysis and properly imposed a light work RFC with limitations, not a sedentary work RFC.

### i. The ALJ's Hypothetical and the Vocational Expert's Testimony

Plaintiff claims that because the Vocational Expert ("VE") "could only identify sedentary work that would fall under the [ALJ's] so-called 'light' RFC," the ALJ actually determined a sedentary work RFC, not a light work RFC. Pl.'s Obj. at 5. Plaintiff mischaracterizes the VE's testimony.

At the hearing, the ALJ asked the VE whether Plaintiff could perform her past relevant work under a hypothetical RFC that aligned with the one stated in his final decision. R. 76–77; *see* R. 31. The VE answered in the affirmative for Plaintiff's past relevant work as a Personnel Services Manager, Community Relations Specialist, Financial Assistance Coordinator, and Executive Director, all of which are sedentary jobs. R. 75–78. The ALJ then asked the VE whether Plaintiff could perform any jobs in the national economy under his hypothetical RFC considering Plaintiff's advanced age, which affected her expected ability to make a vocational adjustment. R. 78; *see* 20 C.F.R. § 404.1568(d)(4) (defining "advanced age" as "age 55 or older"). The VE answered affirmatively by listing several skills that Plaintiff could perform and providing a "sampling of three jobs . . . as representative examples:" Administrative Assistance, Telephone Solicitor, and Customer Complaint Clerk. R. 79–80. These are also sedentary jobs. R. 80. Plaintiff asked no follow up questions to determine if the VE could identify a light work job that Plaintiff could perform under the hypothetical. R. 82.

The VE's testimony that Plaintiff can perform jobs that are sedentary does not transform or constrain the ALJ's light work RFC to a sedentary work RFC. Those who can perform light work are generally deemed able to do sedentary work barring limiting factors "such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). The ALJ did not find these or other limitations that would prevent Plaintiff from completing light work, and he was required to rely on occupations that Plaintiff could perform with limited vocational adjustments. 20 C.F.R. § 404.1568(d)(4); SSR 82-41, 1982 WL 31389 (Jan. 1, 1982); see R. 78–79. The fact that Plaintiff's past relevant work and the VE's three representative examples all happen to be sedentary jobs does not mean that Plaintiff cannot perform light work; they are simply jobs that Plaintiff can perform at her advanced age given her severe impairments. R. 76–81. Therefore, the ALJ in fact determined that Plaintiff had an RFC suitable for light work with certain limitations.

### ii.    Plaintiff's Ability to Sit

Plaintiff also claims that the ALJ's RFC is "inapposite" to light work and practically limits her to sedentary work. *Id.* at 4–5 (citing SSR 83-10). Therefore, Plaintiff argues, Fourth Circuit precedent, a prior decision of this Court, and SSR 96-9p require the ALJ to quantify how long she can sit during a workday and how long she can sit or stand before switching positions. Pl.'s Obj. at 4–5; Pl.'s Mot. at 22–26. The ALJ concluded that he was only required to describe how frequently Plaintiff must alternate between sitting and standing, not the duration she can stay in each position. R. 31 n.1. The ALJ also found there to be insufficient evidence to quantify how long Plaintiff could sit and stand. *Id.*

As Plaintiff argues, the Fourth Circuit in *Dowling v. Commissioner of Social Security Administration* held that "remand may be appropriate in cases where an ALJ fails to discuss a contested function that is 'critically relevant to determining [a claimant's] disability status.'"

*Esteban H.*, 2023 WL 2760059, at \*7 (quoting *Dowling*, 986 F.3d at 388–89); *see* Pl.'s Obj. at 5; Pl.'s Mot. at 22–23. The ALJ found that Dowling, the claimant, could not lift, carry, stand, stoop, balance, or climb stairs or ramps, leading to a sedentary RFC determination. *Dowling*, 986 F.3d at 388–89. Yet despite Dowling's claim that an anal fissure and irritable bowel disease caused her discomfort when sitting for a long time, the ALJ did not analyze her ability to sit. *Id.* at 388. The Fourth Circuit held that had the ALJ found that Dowling could not sit for a prolonged period, he likely would have found her completely incapable of performing sedentary work. *Id.* at 389. Therefore, "assessing [Dowling's] ability to sit [was] critically relevant to determining her disability status," and the ALJ erred in failing to do so. *Id.*

In *Esteban H. v. Commissioner of Social Security Administration*, No. 2:21-cv-61, 2023 WL 2760058 (E.D. Va. Apr. 3, 2023), this Court similarly required an ALJ to provide further analysis of the claimant's ability to sit. The claimant "repeatedly argued that his inability to sit upright cause[d] him to experience intense pain when siting for both short and extended periods of time." *Esteban H.*, 2023 WL 2760059, at\*7. The claimant often needed to adjust himself to either recline, stand, or lie down to manage "discomfort and sometimes excruciating pain in his groin area." *Id.* The ALJ did not evaluate the claimant's alleged sitting problems, however, and concluded that the claimant could stand for approximately 30 minutes and sit "for a few minutes" to rest when performing sedentary work. *Id.* Thus, the ALJ determined that the claimant could perform sedentary work with a sit-stand option. *Id.* On review, this Court concluded that "had the ALJ assessed the claimant['']s sitting restrictions, the ALJ likely would have found that the claimant was incapable of performing any sedentary work." *Id.* This Court therefore remanded the case and directed the ALJ to explain how he accounted for Plaintiff's alleged limitations on sitting upright. *Id.*

*Dowling* and *Esteban H.* are both distinguishable from Plaintiff's case. First, whereas both *Dowling* and *Esteban H.* involved sedentary work RFCs, the ALJ here properly found Plaintiff to have a light work RFC. R & R at 35; *Dowling*, 986 F.3d at 382; *Esteban H.*, 2023 WL 2760059, at*3. Additionally, the Magistrate Judge correctly explained that SSR 96-9p does not apply to light work RFCs "where an ALJ has required a sit-stand option for light work." R & R at 35 (quoting *Gelbrich v. Colvin*, No. 4:13cv54, 2014 WL 1891350, at *12 (E.D. Va. May 1, 2014)); *see* Pl.'s Obj. at 4. Because SSR 96-9p addresses sedentary work RFCs, it does not apply to Plaintiff's light work RFC. SSR 96-9p, 1996 WL 374185 (Jul. 2, 1996).

Second, whereas the claimants in *Dowling* and *Esteban H.* had strong claims of difficulty sitting, there is little evidence supporting Plaintiff's claim that she cannot sit for prolonged periods of time. As the Magistrate Judge observed, in her first appointment with Pivot Physical Therapy in November 2019, Plaintiff frequently shifted her weight while sitting and complained that prolonged sitting aggravated her hip pain. R. 362–63; *see* R & R at 4. In September 2020, Plaintiff self-reported that she cannot sit for long periods because her "toes begin to hurt, and her feet feel ice cold." R. 26, 242. Around that same time, Plaintiff reported to NP-C Shaubell a random "left side middle chain pain" that "last[ed] a few seconds [before] resolving" and usually occurred "when she is just sitting there."[6] R. 990; *see* R & R at 10. At her June 2022 hearing, Plaintiff testified that she can sit for 5 to 15 minutes at a time, fidgets while sitting, and prefers to use a reclining chair at home. R. 72, 363; *see* Pl.'s Mot. at 16, 24.

In contrast to this limited evidence of Plaintiff's difficulty sitting, there is ample evidence that her ability to sit improved over time and that she can complete light work.[7] In December 2020

---

[6] Plaintiff did not feel this pain during the appointment. R. 990 ("c/o left side middle chest pain since last 2 weekends, . . . usually happens when she is just sitting there, not currently").

[7] In her motion for summary judgment, Plaintiff also cited the Shaubell-Vanbrunt opinion as supporting evidence for a limitation on sitting. *See* Pl.'s Mot. at 24. Yet the Shaubell-Vanbrunt opinion provides little

and September 2021, state agency medical consultants found that Plaintiff could "stand and/or walk, and sit, (with normal breaks) for about six hours in an eight-hour workday." R & R at 17–18 (citing R. 107, 119). In July 2021, an occupational therapist found that Plaintiff demonstrated good sitting balance and mobility. R. 1728; *see* R & R at 13–14. In September 2021, Dr. Leyton observed that Plaintiff sat comfortably in her chair despite reporting hip pain. R. 1538–40; *see* R & R at 14–15. Additionally, based on the record as a whole, the ALJ found that Plaintiff's diabetes mellitus with neuropathy is not a severe impairment because it "does not cause her continuous functional limitations and was controlled with medication."[8] R. 27.

In sum, the record does not show that Plaintiff's ability or inability to sit for long periods of time compares to the *Dowling* and *Esteban H.* claimants' allegations of severe discomfort while sitting. Substantial evidence supports the ALJ's determination that Plaintiff can perform light work with a sit-stand option and other limitations, including that she stand or walk no more than four hours per workday. *See* R & R at 31, 36. Even if the ALJ quantified how long Plaintiff could sit, he likely would not have found Plaintiff incapable of light or sedentary work—as was the issue in *Dowling* and *Esteban H. See Dowling*, 986 F.3d at 389; *Esteban H.*, 2023 WL 2760059, at *8. Therefore, Plaintiff's ability to sit is not a "contested function that is 'critically relevant to determining [Plaintiff's] disability status.'" *Esteban H.*, 2023 WL 2760059, at *7 (quoting *Dowling*, 986 F.3d at 388–89)).

For these reasons, the ALJ conducted a proper function-by-function analysis, and Plaintiff's second objection is OVERRULED.

---

to no support for such a limitation, especially considering that the ALJ found the opinion unpersuasive based on substantial evidence. R & R at 34; *see* Pl.'s Mot. at 24. Although the opinion references instability in Plaintiff's feet and hands, discusses her general pain levels, and says she may miss work or need to lie down during the day, none of these are clearly linked to her ability to sit. R. 910–11.

[8] As the Magistrate Judge noted, Plaintiff did not challenge this finding in court. R & R at 31 n.6.

**C.     The ALJ's Duty to Develop the Record**

Finally, Plaintiff objects to the Magistrate Judge's determination that the ALJ properly developed the record. On the first page of the Shaubell-Vanbrunt opinion in the administrative record, the bottom left corner is cut off due to an apparent scanning or copying error, leaving out the beginning of two questions that appear to ask about Plaintiff's ability to use her hands and arms. *See* R. 910. The ALJ acknowledged that this portion of the Shaubell-Vanbrunt opinion is "illegible." R. 35.

The Magistrate Judge found it clear that the cut-off questions concern Plaintiff's ability to raise her arms above shoulder level and use her hands for gross manipulation. R & R at 36–37. He also found that NP-C Shaubell and Dr. Vanbrunt's answers to those questions were fully legible and indicated they "believed Plaintiff could infrequently use her hands for gross manipulation . . . [and] she can 'occasionally' do something (word omitted) with her arms." *Id.* at 37. The Magistrate Judge concluded that because the illegible portion "[did] not substantially affect the reader's ability to interpret the document" and ample evidence existed to limit the opinion's persuasiveness, the ALJ was not required to re-contact the medical sources.[9] *Id.*

Plaintiff argues that the ALJ could not have properly evaluated the Shaubell-Vanbrunt opinion without evaluating the illegible portion. Pl.'s Obj. at 5–6. Plaintiff alleges that the ALJ impermissibly rejected the Shaubell-Vanbrunt opinion simply because it was illegible and thus improperly ignored her abilities to perform manipulative activities or lift her arms even though they are vocationally relevant. *Id.* at 6. Therefore, Plaintiff argues, the ALJ was required to re-contact the opinion source for a clarified statement. *Id.* Plaintiff also contends that because the

---

[9] The Magistrate Judge further noted that Plaintiff was represented by counsel, who had ample opportunity to supplement the record before the Appeals Counsel but failed to do so. R & R at 37.

opinion is partially incomplete, the ALJ's hypotheticals to the VE are incomplete, meaning no substantial evidence supports the ALJ's determination. *Id.*

An ALJ has discretion to re-contact a medical source when evidence is insufficient to make a disability determination or inconsistent with other medical evidence. 20 C.F.R. § 404.1520b(b). "When medical source notes appear to be incomplete," the ALJ should recontact the source and make "[e]very reasonable effort . . . to obtain all medical evidence from the treating source necessary to make a determination of impairment severity and RFC . . . ." SSR 85-16, 1983–1991 Soc. Sec. Rep. Serv. 352, 1985 WL 56855 (Jan. 1, 1985); *see Holmes v. Comm'r of Soc. Sec.*, No. 7:07cv543, 2008 WL 4809951, at *5 (W.D. Va. Oct. 31, 2008) *report and recommendation adopted*, 2008 WL 5332020 (W.D. Va. Dec. 19, 2008). "Illegibility of a treating physician's notes, without other persuasive contrary evidence, is an insufficient basis upon which to reject his opinion." *Jones v. Colvin*, No. 7:13cv00084, 2014 WL 4351607, at *7 (W.D. Va. Sept. 2, 2014) (citing *Holmes*, 2008 WL 4809951, at *4–*6).

This case does not involve illegible or incomplete medical *evidence*, but rather a partially illegible medical *opinion*. This fact distinguishes Plaintiff's case from others where ALJs evaluated medical opinions based on illegible treatment notes without re-contacting the medical source for further evidence. *See Holmes*, 2008 WL 4809951, at *5 (remanding for the ALJ to re-contact the treating physician to clarify his illegible treatment notes because they formed the basis of another medical source's opinion); *Jones*, 2014 WL 4351607, at *8 (finding ALJ could not legitimately discount medical opinion where the medical source's notes were illegible and the ALJ did not cite contradictory opinions or medical evidence). All of NP-C Shaubell and Dr. Vanbrunt's treatment records are complete and legible, meaning the ALJ had sufficient evidence to evaluate their medical opinion.

Although the ALJ did not provide a sufficient supportability analysis when rejecting the Shaubell-Vanbrunt opinion, his analysis demonstrates that he did not reject it simply because one portion was illegible. The ALJ acknowledged that the Shaubell-Vanbrunt opinion said Plaintiff "could occasionally use her hands for fine manipulation." R. 35. But the opinion was written in September 2020, well before Plaintiff's pain improved and before she completed occupational therapy in 2021. R. 911, 1726–45. The ALJ explained that Plaintiff's bilateral wrist pain and mobility improved from July 2021 to September 2021, and that she reported almost no wrist pain in August, September, and October 2021. R. 33–34 (citing Ex. 10F at 1–15 (R. 1726–40)); *see, e.g.*, R. 1736, 1738, 1742, 1744. In general, the ALJ had substantial contrary evidence to find the Shaubell-Vanbrunt opinion unpersuasive.

For these reasons, the ALJ was not required to re-contact the NP-C Shaubell or Dr. Vanbrunt to obtain a fully legible version of their opinion. Additionally, the ALJ's hypothetical questions posed to the VE were proper and her testimony is relevant because they were based on the RFC and limitations that are supported by substantial evidence. *See* R. 31, 76–77; *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("[F]or a vocational expert's opinion to be relevant or helpful, . . . it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments."); *Britt v. Saul*, 860 Fed. App'x 256, 263 (4th Cir. 2021) ("[A]n administrative law judge can rely on the answer to a hypothetical question so long as the question 'adequately reflect[s]' a residual functional capacity that is supported by sufficient evidence."). Plaintiff's third objection is OVERRULED.

## IV.   CONCLUSION

This Court has carefully and independently reviewed the record in this case and the Plaintiff's Objection to the Magistrate Judge's Report and Recommendation. The Court hereby

**SUSTAINS in part and OVERRULES in part** Plaintiff's Objection. ECF No. 15. The Court respectfully **REJECTS** the finding of the Magistrate Judge that the ALJ adequately explained the supportability factor when finding the Shaubell-Vanbrunt opinion unpersuasive. *See* R & R at 31–32 (ECF No. 14). Otherwise, having reviewed the remainder of the Magistrate Judge's Report and Recommendation along with the record of this case and finding no clear error, the Court does hereby **ACCEPT** and **ADOPT** the remaining findings and recommendations set forth in the Report and Recommendation. *See generally* R & R (ECF No. 14).

Plaintiff's motion for summary judgment (ECF No. 11) is **GRANTED** only insofar as it seeks remand of the Commissioner's decision. Defendant's motion for summary judgment (ECF No. 12) is **DENIED**. This case is **REMANDED** to the Social Security Administration for a proper supportability analysis of the Shaubell-Vanbrunt opinion as required under 20 C.F.R. § 404.1520c(c)(1).

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
June 24, 2024

Raymond A. Jackson
United States District Judge